Counsel, you may proceed. Thank you, Your Honor. May it please the court, I'm Steve Mather for the appellant Michael Rogerson who is here in the courtroom with me. Rogerson, I apologize. Yes, that's quite all right. The tax court did three things in our case which they had never done before. The first is they applied the 5 of 10 rule that is commonly known by forcing the IRS to raise this issue and then for the first time ever and then applying it to take an activity that was essentially passive in our years and treat it as active. Second, as an alternative argument, the tax court rejected the statute, the legislative history and 37 years of case law that applies an annual hours-based test to determine whether an activity is passive or not and instead adopted a kind of know it when I see it standard based on what the taxpayer's historical involvement in the business had been without any test for the amount of time spent. Third, on the charter activity, the tax court ignored the statutory definition of a rental activity and applied a technical regulatory provision that basically completely mischaracterizes the fundamental nature of a charter activity. Now, was there actually charter activity? There was not. Well, yeah, therefore, you can't argue then that this was a charter. Well, I could also say that it couldn't be a rental activity if we're relying on the statute. Was there any income received during the period or were there losses that occurred during the period with respect to other people using the yachts? There was not, but the issue in the case is whether it's a rental activity and because it's a rental activity we should be precluded from applying an hours-based test and the statute says that the rental activity applies to payments made for that are principally for the use of tangible personal property. Well, as you point out, there were no payments in this case. So under the statutory definition of rental activity, it can't be a rental activity because there were no payments. The regulation seeks to for there to be a rental activity. So we're trying to figure out what we do with losses with respect to the yachts where there was no activity one way or the other, neither charter nor rental. There was not charter or rental activity. There was time spent on the activity. It was essentially during these years the two yachts were under refurbishment and so there wasn't actual rental or charter activity, but there was a lot of activity. So the taxpayer is trying to take away from income based upon the losses during that period, treating it as if it is non-passive activity. That's correct. I'm sorry, Councilman, just so I better understand. I'm trying to frame the argument. So I understand you want the yacht to be treated as non-passive losses. I assume there are some non-passive gains that those would be offset against somewhere? Well, generally, most income is non-passive, like income from businesses, income from wages. What we're doing today. Yeah, yeah. That's non-passive. So the general rule is you prefer to have non-passive losses because they can be offset against non-passive income. And so there is some not, because I was trying to tie this to the aerospace businesses. Is there a connection between the yacht losses and the aerospace business? Are they trying to offset or is there some other income that's not part of this appeal? I was just trying to put all the pieces together. Okay, well, to piece it together, the aerospace business was highly profitable. So there was a lot of income, non-passive income. That answers my question. And so what the taxpayer is trying to do is to offset some of that income from the aerospace activities by losses with respect to the yachts. Correct. Okay. That's exactly how it pieces together. Thank you. So, and historically, all of these passive loss cases have been based on annual hours-based tests. And so the statute is clear that it is applied annually. The legislative history makes it clear that it's based on the activity during the year. And as I mentioned before, the hours-based tests have been applied in virtually every passive loss case since 1986, when the law first came into existence. And we submit that the hours-based test is actually a logical interpretation of the statute, because it has to be regular, continuous, and substantial. And so what better than an hours-based test to apply that standard? But our case really discards that test in two different respects. It applies this 5 of 10 rule, which specifically rejects or is an alternative to the hours-based test that has always been applied in the past. And then it furthermore, as the backup, as I said, it adopts this kind of know it when I see it standard, which doesn't involve any degree of activity in the case or in the year to determine if it is passive or not. So, and I think if you look at the way that even the regulations put this together, is that the regulations, most of the tests are hours-based tests, 500 hours, 100 hours, whatever the case. And so this 5 of 10 rule is really meant to apply when you don't meet those other, you don't meet those other factors. It is by its very nature an alternative to the hours-based test. And as I said, it's not one that's ever been applied before. And it only is created, it's not mentioned in the statute, not suggested or hinted at in the legislative history. It's only created by this 37-year-old temporary regulation, which just invents the concept. And then to compound... Can I ask you a question? Yeah, there's nothing more difficult than a tax case as far as I'm concerned. And I understand the problems and I understand your argument, which you outlined very well. But why should we address the validity of the temporary guidelines? Going back to what the tax court, the tax court found that Mr. under the statutory text of Section, what is it, 469? So the problem with what the tax court did when it kind of disregarded the regulation is it completely ignored the hours, the hours, the time spent, which has always been the test for whether you have a passive activity or not. Instead, it based the test on kind of what the taxpayer knew and suggested that because he was able to answer questions quickly, that shows that he had prior involvement, I guess. But specifically saying, even if it's true that he only spent minutes, that's still the nature of the activity was enough so that he could be held to be materially participating. But it's never been a test about the nature of the activity. It's always been a test about how much time is spent. I'm at my reserved time, so I'll reserve the rest. Let me borrow some time from somebody else. I want to finish my question. But the tax court found that Mr. Orr was materially participated in the business, not just a little bit, but purely. Right, but I'm sorry, but in the test that the tax court applied for material participation, it was a qualitative test, not a quantitative test. And that's never been the test since the dawn of time that it's purely quantitative or qualitative, not quantitative. Could it be both? I mean, just because he shows up and shoots the breeze with somebody is different from if he shows up and decides who's going to be the next boss of the plant. Yes, it should be both. And there are factors that are taken into account to say, well, you did spend time, but is it the right kind of time? So there is that element, but that isn't really at issue in our case. It was the right kind of time. It just was hardly any time at all. And so that's why under the traditional material participation test, the tax court just completely went off on its own. So did you then present before the tax court the exact number of hours spent by Mr. Rogerson at the facility and indicate to the tax court what decisions he made to show that his quality time was used? Is that the way it went? That was actually what the entire trial was about, was about the reconstruction. He wasn't punching a time clock, but a reconstruction of the time that was spent and the nature of the activities that were being done. That was the whole trial. And then we ended up with an opinion that had nothing to do with what the entire trial was about. Okay, I think that gets your position. Thank you, counsel. We'll give you two minutes for rebuttal. May it please the court, Julia Vetta for the commissioner. The statute has never required a counting up of hours. The statute has consistently required only that activity be regular, continuous, and substantial. That's in section 469H1. The counting up of hours is the reason from 1988 that taxpayer challenges as invalid here. And we submit to this court that regardless of the validity of the temporary treasury regulations, which are quite old, the statute is clear on its face and says regular, continuous, and substantial. And the tax court here made voluminous factual findings that Michael Rogerson was an active and skilled and efficient CEO. He had started this company in 1975. He grew it into a multi-million dollar business. He reorganized it in 2014, but the leadership activity that he undertook to grow and develop and run this business did not change. The business units manufactured the same products in the same locations with the exception of one manufacturing line, which he supervised the relocation of from Pasadena to Irvine. They sold their units to the same contracts, some of whom didn't even know that the reorganization had happened until as late as 2016. He remained the CEO of all three S corporations that were created in the reorganization, and he only claimed passive involvement in one of them. But the tax court found that that was effectively an administrative sleight of hand because his role in the company was the same as it had always been. And it was regular and continuous and statute, not under the regulation. For that reason, the court need not even reach the regulation to affirm. Well, if we're to ignore the temporary regulation providing the seven tests for material participation, which I think you're saying, how should we deal with the temporary regulations? What do you have so that you can be fair with all of the taxpayers and not have different kinds of schemes? I don't mean schemes. I mean tests that you have. Could you help me out with that? Well, Your Honor has identified the key reason why the regulation is valuable. It does explain heuristics by which you can, a court may determine whether activity is regular, continuous, or substantial. But we submit that the plain meaning of those words gives a court a guideline within which to evaluate a factual record, to look at the extent, the regularity of a person's involvement. How often did he touch this activity? Was he a passive investor? Was he an employee? Was he involved in the leadership? Was it continuous? Over how many years did he look? This was not, of course, a year by year discrete inquiry, as taxpayers suggest. Okay, so when Mr. Rogerson's tax lawyer was figuring out what the tax would be paid, you listed some things. Where would he find those things so that he's on guard to make sure the taxes are appropriate? Are they in some letter? Are they in some rule? Where would I go to find out what are the specifics? Today, you would look to the temporary treasury regulation. That is where those tests are listed and have been since 1988. We submit that the court need not take a position on the validity of the regulation to find that the tax court's factual findings were not clearly erroneous within the meaning of the statute. However, as Your Honor has identified, this regulation serves a valuable purpose. It provides heuristics for taxpayers who want to know how can I figure this out? And there are several different ways they can do that. There are hours-based tests. There are three hours-based tests. There are other more holistic tests that have to do with, is this related to other activities that the taxpayer is working on? Is this one taxpayer's involvement and it's 100% of everything that everyone did on this activity? One of the heuristics even tracks the statute and says, facts and circumstances. Look at everything and say, is this regular, continuous, and substantial? So the plain meaning of those terms comes with weight, even under the regulation. But the regulation does give taxpayers these tools by which to determine how am I doing? Am I complying with this statute? How should I treat my involvement in this? And in this case, you had an industry leader who built up an extraordinarily successful business, which he then reorganized later in his career because he was looking to sell off parts of the business, but he never changed the role he played. He never ceased to be a leader. He never ceased to be an active and very efficient CEO. And the running of a business efficiently does not make it a passive activity. He was doing his job and he was very good at it. So it took him possibly fewer hours than it would take me or someone else here who was not an expert in managing aerospace manufacturing operations. I want to turn briefly to Your Honor's question about the passive activity regarding the yachts. In past tax years, there was only one yacht. The second yacht was procured in 2014. But in earlier tax years, a taxpayer had claimed the yacht activity as a rental activity and had gone through an appeal with the IRS where he had defended that position and the IRS had come to accept it and said, okay, even though you have extremely limited income from this rental activity, you are developing this tangible property, this yacht, with the intent to charter it. You are holding it for use to customers. Therefore, we'll give it to you. It's passive. It's rental activity. So there was a very large carry-forward loss from previous tax years. And this is identified in the Notice of Deficiency that, as Your Honor noted earlier, you're looking to offset your passive income against your passive losses and your active income against your active loss. That's the passive loss. That is the motivation for trying to carve out part of a very successful active business and treat it as passive in order to absorb that loss. If the Court has no further questions, we would be pleased to rest on our brief and give back the extra credit time. Judge Wallace, anything? No, thank you very much. Thank you, Counsel, very much. Thank you. Thank you. So the statute says regular, continuous, and substantial. So what I just heard from the government is that, well, maybe regular is enough, or maybe a little bit of continuousness is okay, and substantial doesn't matter. Well, it's not disjunctive. It's all three. And I don't know how you can have no measure of the time spent and have it be substantial. And particularly in light of the 37 years of case history where every single case was decided on how many hours were spent. So this is really a huge jump away from what the entire history of this issue has been. And it was essentially forced on the IRS after the trial was over without the IRS even notifying us that that was an issue in the case. And I'd like to, again, provide a little factual background of why we're talking about this one business. The analog parts business of this venture was separated out specifically because Mr. Rogerson's time was not needed in that. It was going to be sold. So the parts of the business that didn't require his time were bundled together to be sold. And the court found there was a substantial non-tax reason to do that that way. And yet, even in applying the 5 of 10 rule, it says, okay, so we have this analog business where he's not really working on. But because it was jumbled in the prior year, we're going to treat it as if it was claimed as being material participation in the prior year. And not compare it to the business that existed in our years. And that, to us, is an incorrect application of the 5 of 10 rule, even if it somehow can apply. Thank you. Thank you very much, counsel. Thank you both for your argument and briefing in this case. This matter is submitted.
judges: WALLACE, FLETCHER, OWENS